UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA RACHEL GUZIKAUSKAS,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,[1]<br><br>Defendant. | Case No.: 18cv2086-GPC-MDD<br><br>**REPORT AND RECOMMENDATION ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT**<br>**[ECF NOS. 12, 14]** |

Plaintiff Jessica Rachel Guzikauskas ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Defendant") denying Plaintiff's application for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI of the

---

[1] Andrew M. Saul became Commissioner of Social Security on June 17, 2019 and is therefore substituted for Nancy A. Berryhill as the Defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

Social Security Act. ("Act").[2] (AR 1).[3]

For the reasons expressed herein, the Court recommends Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

## I. BACKGROUND

On May 26, 2017, the ALJ issued a decision finding that Plaintiff was not disabled **April 1, 2006 to July 8, 2013**, but became disabled on that date and has continued to be disabled through the date of the ALJ's decision. (AR 17). It is the ALJ's decision finding Plaintiff not disabled between April 1, 2006 and July 8, 2013 that is at issue in Plaintiff's appeal. Plaintiff was born on June 25, 1978. At the time the instant application was filed (November 14, 2012) Plaintiff was 34 years old which categorized her as a younger individual (age 18-44). Plaintiff's age category has not changed since the established onset date. 20 C.F.R. §§ 404.1563, 416.963.

### A. Procedural History

Plaintiff filed an application for a period of Disability Insurance Benefits under Title II. (AR 17). Plaintiff also filed an application for Title XVI Supplement Security Income on the same date. Both applications alleged disability beginning **April 1, 2006**. (*Id.*). Both claims were denied initially and upon reconsideration. Plaintiff subsequently requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*). An administrative

---

[2] Disabled people may qualify for two types of entitlements under the Social Security Act—the Social Security Disability Insurance (SSDI) program and the Supplemental Security Income (SSI) program. Eligibility for SSDI benefits does not depend on financial need. See 42 U.S.C. § 423 (2015). SSI provides benefits to disabled individuals who have not participated significantly in the nation's work force as measured by the amount each has paid into the Social Security fund. Eligibility for SSI is dependent upon financial need. *Id.* § 1382.
[3] "AR" refers to the Certified Administrative Record filed on November 20, 2018.

hearing was held on February 8, 2017. Plaintiff appeared and was represented by attorney David M. Shore. Testimony was taken from Plaintiff and Erin M. Welsh, a vocational expert ("VE"). (*Id.*).

The ALJ specifically found that Plaintiff "was not under a disability within the meaning of the Social Security Act at any time through June 30, 2010, the date last insured." (*Id.*). Accordingly, the ALJ found since April 1, 2016, Plaintiff could not perform "any past relevant work" but found "there were jobs that existed in significant numbers in the national economy that [she] could have performed." (AR 28, 29). The ALJ further found "[b]eginning on July 8, 2013, considering [Plaintiff's] age, education, work experience and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [she] can perform." (AR 30).

On July 23, 2017, Plaintiff sought review with the Appeals Council. (AR 227). On July 6, 2018, the Appeals Council denied Plaintiff's request for review and declared the Administrative Law Judge's decision to be the final decision of the Commissioner of Social Security in Plaintiff's case. (AR 1-3). This timely civil action followed.

## II. DISCUSSION

### A. Legal Standard

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. *Id.*; *see also Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1993 (9th Cir. 2004).

Substantial evidence means "more than a mere scintilla" but less

than a preponderance. *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Batson*, 359 F.3d at 1193. When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

In rendering his decision, the ALJ followed the Commissioner's step sequential evaluation process. *See* C.F.R § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2006. (AR 19).

At step two, the ALJ found that Plaintiff has the following severe impairments: "Mollaret's syndrome (aka benign recurrent meningitis); Irritable Bowel Syndrome or related gastrointestinal disorder; PTSD; and anxiety disorder." (*Id.*).

At step three, the ALJ found that since her alleged onset date of April 1, 2006, Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (AR 20).

The ALJ addressed Plaintiff's alleged mental impairments in accordance with the disability regulations for evaluating mental disorders set out in 20 C.F.R., Part 404, Subpart P, Appendix 1. "The criteria in

4

paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.* Regarding paragraph B criteria, the ALJ found "mild limitations in understanding, remembering or applying information, moderate limitations in interacting with others, moderate limitations in concentrating, persisting, or maintaining pace, and moderate limitations in adapting or managing oneself." (AR 20). The ALJ also opined that Plaintiff's mental impairments did not satisfy paragraph C criteria of the applicable mental disorder listings. According to the ALJ, "the record does not convey a history of participation in medical treatment, mental health therapy, psychosocial support, or a highly structured setting(s)." (*Id.*). "[T]here is no indication that the [Plaintiff] had only marginal adjustment to changes in her environments or to demands that are not already part of her daily life." (*Id.*).

At step four, the ALJ found that Plaintiff had the residual functional capacity prior to July 8, 2013, "to perform the full range of unskilled sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)." (AR 21). The ALJ added the following limitations:

> No lifting more than 2 pounds at a time, on more than an occasional basis; no lifting and then carrying articles weighing more than 2 pounds, on more than an occasional basis; no standing or walking more than 2-3 minutes at one time and not more than a total of two hours in an 8-hour workday; no sitting more than 30 minutes at one time, and no more than 6 total hours in an 8-hour work day;…no more than occasional stooping, bending, twisting or squatting; no working on the floor (e.g. no kneeling, crawling, or crouching); no ascending/descending full flights of stairs (a few steps up or down not precluded); no overhead lifting or overhead reaching with either extremity; no more than frequent reaching, frequent handling, frequent fingering; no working in other than a clean, climate controlled environment, with only minimal allergens; no working around

5

dangerous unprotected heights, machinery, or chemicals; no working in an area without a restroom nearby, for quick access, [Plaintiff} must have the option to take, in addition to standard breaks and lunch, 1-2 additional restroom breaks in the a.m. and 1-2 additional restroom breaks in the p.m. of about 5 minutes in duration for each such break;
Additionally, Plaintiff cannot work in other than a low stress environment, which means:
-a low production level (where all jobs are classified as low production).
-no working with the general public and no working with crowds of co-workers,
-only "occasional" verbal contact with supervisors, and only "occasional" verbal contact with co-workers,
 work at no more than a low concentration level, which means the ability to be alert and attentive to (and to adequately perform) only routine unskilled work tasks;
 work no more than a low memory level, which means:
-the ability to understand, remember and carry out only "simple" work instructions,
-the ability to remember and follow only "occasional" changes in routine work instructions,
-the ability to remember and use good judgment in making only "simple" work related decisions. (AR 20-21).

For the purposes of the step five determination, the ALJ found that Plaintiff's limitations had "eroded" the unskilled sedentary occupational base and sought the opinion of the VE whether jobs existed in the national economy for an individual with the Plaintiff's age, education, work experience, and RFC. (AR 29). The VE testified that Plaintiff would be able to perform the representative occupations of Lens inserter, DOT 713.687-026, a sedentary unskilled occupation; Addressing clerk, DOT 209.587-010, a sedentary unskilled occupation; and Document preparer, DOT 249.587-018, a sedentary unskilled occupation.

Based on the testimony of the VE the ALJ determined that prior to July

6
18cv2086-GPC-MDD

8, 2013, Plaintiff remained capable of performing unskilled sedentary occupations that existed in significant numbers in the national economy. **The ALJ found that Plaintiff "was not disabled prior to July 8, 2013, but became disabled on that date and has continued to be disabled through the date of this decision."** (AR 31). After that date, no jobs existed in the national economy that Plaintiff could perform given her age, education, work experience and residual functional capacity due to Plaintiff's excessive absenteeism and poor performance - which is supported by the record evidence.

### B. Sole Issue in Dispute

As reflected in Plaintiff's motion for summary judgment, the disputed issue raised by Plaintiff is whether the ALJ failed to articulate specific and legitimate reasons for rejecting Plaintiff's pain and limitation testimony. (ECF 12-1 at 9). Defendant argues that "[w]hile Plaintiff disagrees with the ALJ's interpretations of the record evidence, her mere disagreement does not – and cannot – result in reversible legal error. (ECF 14-1 at 7-8). Defendant goes on to argue "the ALJ reasonably concluded that the evidence did not support Plaintiff's alleged level of debilitating pain and functional limitations" prior to July 8, 2013. (*Id.* at 7).

### C. Analysis

In *Lingenfelter v. Astrue*, 504 F.3d 1028, (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing credibility in the context of social security appeals.

> To determine whether a [Plaintiff's] testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the Plaintiff has presented objective medical evidence of an underlying impairment which could reasonably be expected to

produce the pain or other symptoms alleged. The Plaintiff, however, need not show that her impairment could reasonably be expected to cause the severity of symptoms she has alleged; she need only show that it could reasonably have caused some degree of symptom. Thus, the ALJ may not reject subjective symptom testimony simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
   Second, if the Plaintiff meets this first test, and there is no evidence of malingering, the ALJ can reject the Plaintiff's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so….

*Lingentfelter*, 504 F.3d at 1035-36 (internal citations omitted).

In weighing a Plaintiff's credibility an ALJ may consider, among other things, the Plaintiff's "reputation for truthfulness, inconsistencies either in the Plaintiff's testimony or between her testimony and her conduct, Plaintiff's daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms alleged by Plaintiff." *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The court may not second guess an ALJ's credibility finding if it is supported by substantial evidence in the record. *Id.*

### 1. Objective medical evidence

Once a Plaintiff "produces objective medical evidence of an underlying impairment, an ALJ may not reject a Plaintiff's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676,680 (9th Cir. 1991) (internal citations omitted). "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Id.*

One reason cited by the ALJ in support of his adverse credibility

8

determination was that "the severity of pain alleged from [Plaintiff] is disproportionate to the objective evidence" for the time period at issue." (AR 23). The ALJ specifically noted in her Adult Function Report that Plaintiff asserted a history of seizures, and had trouble handling funds and financial accounts due to headaches/vision problems. She also stated she had difficulty with all exertional, postural, manipulative, cognitive, and social abilities. (*Id.*). The ALJ also noted that Plaintiff stated she was not taking any medications for the alleged conditions because she was allergic to them. (AR 23).

The ALJ pointed out that "[t]he file shows [Plaintiff] sought treatment for panic attacks and weight loss of unclear etiology in late 2007," but found that [n]o significant treatment was provided…." (AR 23). The ALJ further pointed out that "[t]he record shows a significant gap in care spanning from 2008-2010. (*Id.*). The ALJ also cited to several records related to Plaintiff's alleged disabilities:

2010: Plaintiff asserted a history of seizures. However, the ALJ found "no imaging workups or medical treatment from an orthopedic doctor or neurologist for any musculoskeletal pathology." (AR 23). The ALJ also cited to an examination by her chiropractor who documented Plaintiff's claim of seizures but noted in his report that "[s]he has not received [] medical attention other than chiropractic visits, massage therapy, and holistic therapy." (AR 465).

July 2012 : Plaintiff received treatment for perirectal abscesses which were resolved without further complication. (AR 24, 393). She also was seen for abdominal cramping, back pain, and vaginal irritation. The record notes that upon examination Plaintiff had minimal abdominal tenderness, no neurological abnormalities, normal metabolic panel, normal abdominal

9

imaging and a diagnosis of IBS with no medication or colonoscopy. (*Id.*).

October 2012: Plaintiff was seen for seizures that she stated were getting worse. The record evidence shows that Plaintiff appeared neurologically intact with no signs of motor or sensory defect. (AR 425).

April 2013: Plaintiff appeared for a consultative neurological exam. The examining physician found Plaintiff had a normal mental state, and unremarkable motor reflexes, sensation and gait. (AR 483-485).

Plaintiff also had a consultative internal medicine exam in April 2013. Plaintiff alleged pain in her eyes, ears, neck, back, joints, seizures, and stomach pain. Her HEENT was normal but Plaintiff would not consent to an eye or ear exam. Plaintiff also refused to perform an upper extremity range of motion exam. Dr. Kanner stated in her report that based on Plaintiff's lack of cooperation she was unable to assess Plaintiff''s overall functionality. (AR 492-499). After considering the above record evidence and the record as a whole, the ALJ opined that there was "little clinical or objective evidence" demonstrating that Plaintiff was not functioning at least within her assessed RFC. (AR 25).

On this record, the ALJ reasonably concluded that the objective record evidence did not support the severity of Plaintiff's alleged impairments. This constituted a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. *See, e.g., Molina v. Astrue*, 674 F.3d 1104 at 1113 (9th Cir. 2012) (ALJ properly rejected claimant's testimony in part because it was inconsistent with medical evidence in the record); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (ALJ properly considered conflict between claimant's testimony about knee pain and specific evidence in the record); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly consider conflict between claimant's testimony

10

of subjective complaints and objective medical evidence in the record).

### 2. Failure to Seek Treatment

The other reason cited by the ALJ in support of his adverse credibility determination was Plaintiff's failure to seek treatment.

The Ninth Circuit has held "evidence of conservative treatment is sufficient to discount a [Plaintiff's] testimony regarding severity of impairment." *Parra v. Astrue*, 481 F.3d 742-750-51 (9th Cir. 2007); *see also Meanel v. Apfel*, 172 F.3d 111, 1114, (9th Cir. 1999) (finding that assertions of pain approaching the highest level imaginable was inconsistent with the 'minimal and conservative treatment' that [Plaintiff] received and was a permissible reason for the ALJ to consider in his credibility determination.) "According to agency rules, 'the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." *Molina v. Astrue*, 674 F.3d at 1114. The Ninth Circuit in *Molina* found "'[a]lthough Molina provided reasons for resisting treatment, there was no medical evidence that Molina's resistance was attributable' to anything other than her own personal preference and it was reasonable for the ALJ to conclude that the "level of frequency of treatment [was] inconsistent with the level of complaints." *Id.* (internal citations omitted)

Plaintiff's case is factually similar to *Molina*. Notably, Plaintiff's testimony is replete with statements regarding her refusal to follow treatment recommendations. For example, when discussing her claimed recurrent seizures and related medical treatment, Plaintiff testified "I'll do anything now, not to go to the hospital. I mean anything." (AR 50). She continued by testifying "I literally will not go of choice ... I know ... that there

1 are records of me having seizures and being taken in an ambulance because
2 someone else called and I couldn't refuse." (*Id.*)

In addition, there is evidence in the record from alternative treatment providers that Plaintiff stated she would not consider recommended treatment resulting from her hospital visits. Specifically, her chiropractor stated "[s]he has expressed to me her non-preference for allopathic medical/pharmaceutical approaches and favoring holistic modalities due to family history of substance abuse and philosophical reasons." (AR 46). Plaintiff also testified "she felt injured by the treatment [she] was given," would not go to the hospital by choice and she has "even broken friends' phones, who were trying to call 911." (AR 50). The ALJ also cited to the notes of March 27, 2013, from the Julian Medical Clinic. (AR 522). On that date Plaintiff was being seen for reported anxiety, reported seizure disorder, reported leptospirosis and headache. (*Id.*). The clinic's treatment notes indicate Plaintiff refused medication for anxiety and refused medication for headache.

Based on the ALJ's findings and citations to the record, the ALJ appropriately relied on Plaintiff's failure to follow treatment recommendations as a reason to discount Plaintiff's credibility.

In a related argument, Plaintiff implies that she failed to seek treatment due "to the presence of a mental impairment." (ECF 12 at 10). Plaintiff asserts that for the time period at issue, the medical records support her claim for "depression, PTSD, and anxiety." (ECF 12 at 10). Specifically, Plaintiff contends that "on February 7, 2008, [she] was held on a 5150 because of mental health." (ECF 12-1 at 10). Plaintiff also notes that "in 2007, she was seen at Palm Drive Hospital for panic attacks." (*Id.*). Lastly Plaintiff cites to a mental status examination on October 30, 2012, that

observed she was tearful and very anxious. (*Id.*).

Defendant argues "Plaintiff misunderstands the ALJ's findings." (ECF 14-1, 6). Defendant notes that the ALJ had previously found Plaintiff did not suffer from a mental disability during the period at issue. (*Id.*). Accordingly, the ALJ's analysis was focused on her ability to work despite the mental restrictions contained in her RFC. Defendant further argues that Plaintiff has cited no persuasive evidence demonstrating that Plaintiff's failure to seek treatment was due to her mental illness. (*Id.*).

The Ninth Circuit has held "we have particularly criticized the lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter v. Commissioner of Social Security Admin.*, 166 F.3d 1294, 1299-300 (9th Cir. 1999) (internal citations omitted).

In this case there is no record evidence that Plaintiff's failure to seek medical treatment was caused by a mental health disability. For example, when Plaintiff appeared at the emergency room at Palm Drive Hospital in 2007, the examining physician noted that her general appearance showed she was alert and in no acute distress. She did appear depressed with a flat affect but her orientation was normal. (AR 380). Her pain upon arrival at the ER was noted as a 2 and noted as 0 upon discharge. (AR 371-372). She was discharged the same day and given instructions regarding panic attacks and how to handle them at home. (AR 376). Additionally, a review of the record also shows that after many attempts by S.S.A. to schedule a consultative psychological examination, Plaintiff never cooperated with scheduling and was deemed a "failure to cooperate." (AR 81-83, 89). As noted by the ALJ there is little substantive evidence that the reason Plaintiff did not seek

13

medical treatment was due to her alleged mental impairment. (AR 26). Indeed, Plaintiff received physical and mental health evaluations on many occasions, however, she failed to follow through with her treatment recommendations. Nothing in the record demonstrates that she did so due to an alleged mental disability. (AR 371-376, 396-398, 399-401, 402-404).

The Court therefore finds that the ALJ's second stated reason also constituted a clear and convincing reason on which the ALJ could rely in support of his adverse credibility determination.

### III. CONCLUSION

Considering the record as a whole, the ALJ's findings are based upon substantial evidence and correctly applied law. For the foregoing reasons, this Court RECOMMENDS that Plaintiff's motion for summary judgment be DENIED, that the Commissioner's cross-motion for summary judgment be GRANTED.

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the court and served on all parties no later than **August 14, 2019**. The document should be captioned "Objections to Report and Recommendations."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 21, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 30, 2019

Hon. Mitchell D. Dembin
United States Magistrate Judge