UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA RACHEL GUZIKAUSKAS,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security Administration,<br><br>Defendant. | Case No.: 18cv2086-GPC(MDD)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Dkt. Nos. 12, 14.]** |

On September 7, 2018, Plaintiff Jessica Rachel Guzikauskas ("Plaintiff") filed this action seeking judicial review of the Commissioner of Social Security's final decision partially denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. No. 1.) Plaintiff filed a motion for summary judgment and Defendant filed a cross-motion for summary judgment. (Dkt. Nos. 12, 14.) On July 30, 2019, Magistrate Judge Mitchell D. Dembin issued a Report and Recommendation ("R&R") that Plaintiff's motion for summary judgment be denied and that Defendant's cross-motion for summary judgment be granted. (Dkt. No. 15.) No Objections have been filed. After careful consideration of the R&R, the pleadings, the

1

supporting documents, and the applicable law, the Court **DENIES** Plaintiff's motion for summary judgment, and **GRANTS** Defendant's cross-motion for summary judgment.

## Background

In November 2012, Plaintiff filed applications for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Social Security Act alleging a disability date of April 1, 2006. (Dkt. No. 10-5, Administrative Record ("AR") 228, 234.) Plaintiff alleged disability based on cluster seizures, depression, allergic to most meds, constant diarrhea, staph infection from surgery to lower spin and sleep disturbance. (AR 260.) Plaintiff's claims were initially denied on July 11, 2013, (AR 75; 96), and again upon reconsideration on June 4, 2014. (AR 166, 172.)

On July 28, 2014, Plaintiff filed a written request for an administrative hearing. (AR 179-80.) On February 8, 2017, Plaintiff appeared with counsel and testified before Administrative Law Judge Robin L. Henri. (AR 39-73.) At the time of the hearing before the ALJ, Plaintiff was thirty-eight years old. (AR 42.) Plaintiff had prior work as a massage therapist and instructor. (AR 42.)

On May 26, 2017, the ALJ issued a partially favorable written decision finding that Plaintiff was not disabled as defined under the Act prior to July 8, 2013 but was disabled from July 8, 2013 through the date of the ALJ's decision.[1] (AR 17-31.) On July 6, 2018, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

On September 7, 2018, Plaintiff commenced the instant action seeking judicial review of the Commissioner's decision. (Dkt. No. 1.) On November 30, 2018, Defendant

---

[1] Under Title II, to qualify for benefits Plaintiff had to demonstrate she was disabled as defined under the Act on or before June 30, 2010, the date last insured. (AR 17, 31.) The ALJ concluded that she was not disabled at any time through June 30, 2010. (AR 31.) The ALJ also concluded under Title XVI, Plaintiff was disabled as defined under the Act beginning on July 8, 2013 but not disabled prior to July 8, 2013. (AR 31.)

answered and lodged the administrative record with the Court. (Dkt. Nos. 9, 10.) On January 4, 2019, Plaintiff moved for summary judgment. (Dkt. No. 12.) On February 4, 2019, the Commissioner cross-moved for summary judgment and responded in opposition to Plaintiff's motion. (Dkt. Nos. 13, 14.) No replies were filed to Plaintiff's motion for summary judgment and no opposition was filed to the Commissioner's cross-motion for summary judgment.

## The ALJ Decision

ALJ Robin L. Henri began the analysis finding Plaintiff met the insured status requirement through June 30, 2010. Next, the ALJ applied the five-step sequential framework to determine that Plaintiff was not disabled prior to July 8, 2013 but became disabled on July 8, 2013 and continues to be disabled through the date of the decision. (AR 19-32.) At step one, the ALJ found that Plaintiff has not engaged in substantial, gainful activity since April 1, 2006. (AR 19.) At step two, the ALJ found that since that date, Plaintiff has had the following severe impairments: Mollaret's syndrome (benign recurrent meningitis); irritable bowel syndrome or related gastrointestinal disorder; PTSD; and anxiety disorder. (AR 19.) At step three, the ALJ found that since April 1, 2006, Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20.)

At step four, the ALJ determined that, prior to July 8, 2013, Plaintiff had the RFC to perform the full range of unskilled sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a) where such work could not have required:

lifting more than 2 pounds at a time, on more than an occasional basis;

lifting and then carrying articles weighing more than 2 pounds, on more than an occasional basis;

standing or walking more than 2-3 minutes at one time, and no more than 2 total hours in an 8-hour workday;

sitting more than 30 minutes at one time, and no more than 6 total hours in an 8-hour workday;

note: regarding standing/walking and sitting, to be as comfortable as possible, claimant requires the option to make the postural changes noted above, thus there must be an option to perform work duties while standing/walking or sitting, due to the need for these postural changes;

more than occasional stooping, bending, twisting or squatting;

working on the floor (e.g. no kneeling, crawling or crouching);

ascending or descending full flights of stairs (but a few steps up or down not precluded);

overhead lifting or overhead reaching with either extremity;

more than frequent reaching, frequent handling, frequent fingering;

working in other than a clean, climate controlled environment, with only minimal allergens;

working around dangerous unprotected heights, machinery or chemicals;

working in an area without a restroom nearby, for quick access, and claimant must have the option to take, in addition to standard breaks and lunch, 1-2 additional restroom breaks in the a.m. and 1-2 additional restroom breaks in the p.m., of about 5 minutes in duration for each such break:

working in other than a low stress environment, which means:

• a low production level (where VE classified all SGA jobs as low, average or high production),
• no working with the general public and no working with crowds of co-workers,
• only "occasional" verbal contact with supervisors, and only "occasional" verbal contact with co -workers,

work at no more than a low concentration level, which means the ability to be alert and attentive to (and to adequately perform) only routine unskilled work tasks;

work at no more than a low memory level, which means:

- the ability to understand, remember and carry out only "simple" work instructions,
- the ability to remember and follow only "occasional" changes in routine work instructions
- the ability to remember and use good judgment in making only "simple" work related decisions.

(AR 20-22.) The ALJ concluded that Plaintiff had been unable to perform any past relevant work since April 1, 2006. (AR 28.) Given Plaintiff's RFC, at step five, the ALJ determined, after consulting with the vocational expert, that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed. (AR 29.) Therefore, the ALJ concluded that prior to July 8, 2013, Plaintiff had not been under a disability as defined in the Social Security Act. (AR 31.) For purposes of SSI under Title XVI, the ALJ found that Plaintiff became disabled on July 8, 2013 and continued to be disabled through the date of the decision. (AR 31.)

## Discussion

**A.      Standard of Review of Magistrate Judge's R&R**

The district court's duties in connection with an R&R of a magistrate judge are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b). The district judge must "make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b). The district court need not review *de novo* those portions of an R&R to which neither party objects. See Wang v. Masaitis, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005); U.S. v. Reyna-Tapia, 328 F.3d 114, 1121-22 (9th Cir. 2003) (*en banc*). When no objections are filed, the Court may assume the correctness of the magistrate judge's findings of fact and decide the

5

18cv2086-GPC(MDD)

motion on the applicable law. Campbell v. United States Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974); Johnson v. Nelson, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

Because no objections have been filed, the Court assumes the correctness of the magistrate judge's factual findings. See Campbell, 501 F.2d at 206.

**B.     Standard of Review of the Commissioner's Decision**

A court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as reasonable to support a conclusion." Id. The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely for the Secretary." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

**C.     Analysis**

Plaintiff presents a single argument that the final decision by the Commissioner is erroneous because the ALJ failed to provide specific and legitimate reasons for rejecting Plaintiff's statements of persistence, intensity and limitations regarding her symptoms. (Dkt. No. 12-1 at 9-12.) According to Plaintiff, the ALJ's stated reasons for rejecting her testimony, i.e., the lack of objective evidence, refusal of Western medical treatment and

6

lack of inpatient hospitalizations, were legally insufficient. Defendant responds that the ALJ appropriately concluded that Plaintiff's allegations of debilitating symptoms and limitation are not supported by objective medical evidence and her lack of medical treatment does not support her severe symptom allegations. The ALJ's reference to her lack of hospitalizations for her mental condition was used to determine whether Plaintiff could still work despite the mental restrictions listed in the RFC findings and not whether she would cause harm to herself.

For purposes of the Social Security Act, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant carries the initial burden of proving disability. Id. at § 423(d)(5); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989).

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must assess "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. Smolen, 80 F.3d at 1281. The ALJ determines "credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). General findings are not sufficient; "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015). The decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to . . . any subsequent reviewers

the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.; see Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) ("[An ALJ] must state which pain testimony is not credible and what evidence suggests the claimant[ ] [is] not credible."). The ALJ must provide "specific, cogent reasons for the disbelief" when it rejects the claimant's complaints. Lester v Chater, 81 F.3d 821, 834 (9th Cir. 1995) ("General [credibility] findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain . . . it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ "[m]ay consider a range of factors in assessing credibility, including (1) 'ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Smolen, 80 F.3d at 1284).

The Magistrate Judge concluded that the ALJ provided specific, clear and convincing reasons to reject Plaintiff's pain testimony based on the lack of objective medical evidence and her failure to seek medical treatment. (Dkt. No. 15 at 8-14.)

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to July 8, 2013." (AR 23.) In discrediting Plaintiff's allegations of debilitating impairments, the ALJ concluded that there was no objective evidence to support the alleged onset date of April 1, 2006. Despite the lack of objective medical evidence, the ALJ gave Plaintiff "the benefit of the doubt that she had all of the

severe impairments . . . as such were more firmly diagnosed and established as of July 8, 2013, but were not shown to be as severe and limiting early on." (AR 26.)

Then the ALJ recited the available medical records from late 2007 to April 2013 noting gaps from 2008 through 2010, (AR 23), and again from January 2011 through July 2012, (AR 24). As to her mental issues, the ALJ recognized her diagnosis for anxiety disorder with features of PTSD, agoraphobia and mysophobia in a Progress Note dated March 27, 2013 but Plaintiff refused medication. (AR 522.) There was also no evidence of outpatient counseling for PTSD or other anxiety related disorders. (AR 25.) The ALJ noted that Plaintiff did not require inpatient hospitalizations for psychiatric reasons and there was no formal mental health counseling to support her allegation that she is unable to work outside her RFC assessment. (AR 25.) The ALJ further stated that while she sought diagnostic opinions from medical doctors, she "routinely refused Western medical treatment." (AR 25.) The ALJ considered and gave some weight to third-party statements submitted by her friends which describe her inability to function due to seizures, depression, muscle spasms, malaise, fatigue. (AR 26.) He did not give great weight to them because the preponderance of the objective medical and clinical evidence does not preclude her from performing the activities consistent with the RFC. (AR 26.)

Plaintiff admits that there is little medical evidence from 2006 to 2013. (Dkt. No. 12-1 at 10.) But she argues that there are medical records to support her claim for depression, PTSD and anxiety citing to her 5150 mental health hold on February 7, 2008; being seen for panic attacks in November 2007, (AR 376), and a mental status examination shows she was tearful and very anxious in October 2012. (AR 426.) While these three separate incidents months apart show some mental impairments, they do not rise to the level of mental impairments required under the Act. Under the Act, Plaintiff must show an "inability to engage in any substantial gainful activity by reason of any . . . mental impairment . . . that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ's reliance on the lack

9

of objective medical evidence to support his findings was not legal error because it was not the sole basis for his decision.

The ALJ also noted that Plaintiff continually sought diagnostic opinions from medical doctors but routinely refused Western medical treatment. (AR 25.) The Ninth Circuit has held that in assessing a claimant's credibility, the ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" Ghanim v. Colvin, 763 F.3d at 1163; Tommasetti v. Astrue, 533 F.3d 1038, 1039 (9th Cir. 2008). According to agency rules, "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96–7p.

When refusing to follow prescribed treatment, a claimant must provide good reasons or the reasons must be related to the mental impairment and not based on personal preference. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (no medical evidence that her "resistance was attributable to her mental impairment rather than her own personal preference, and it was reasonable for the ALJ to conclude that the level or frequency of treatment [was] inconsistent with the level of complaints.") "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Acceptable reasons for failing to follow prescribed treatment include,

> (1) The specific medical treatment is contrary to the established teaching and tenets of your religion.
> (2) The prescribed treatment would be cataract surgery for one eye when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.
> (3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.
> (4) The treatment because of its enormity (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or
> (5) The treatment involves amputation of an extremity, or a major part of an extremity.

20 C.F.R. § 416.930(c).

Here, the record demonstrates that Plaintiff's refusal to follow medical treatment was based on her personal preference for alternative medicine and not due to her mental impairment. For example, her chiropractor stated "[s]he has expressed to me her non-preference for allopathic medical/pharmaceutical approaches and favoring holistic modalities due to family history of substance abuse and philosophical reasons." (AR 460.) In progress notes dated March 27, 2013 from the Julian Medical Clinic, Plaintiff was assessed with an anxiety disorder, seizure disorder, leptospirosis and headaches. (AR 522.) The notes state that Plaintiff refused medication for anxiety and refused medication for the headache. (AR 522.) At the hearing, Plaintiff testified "I'll do anything now not to go to the hospital. I mean anything. I've even broken friends' phones, who were trying to call 911. . .if there's a hospital record, it's because I was taken there and wasn't capable of not being there. I literally will not go of choice . . . ." (AR 50). Finally, during the consultative examination, Dr. Amy Kanner could not determine her functional assessment because Plaintiff was unwilling to allow certain testing. (AR 499.)

These records show that Plaintiff's refusal to follow medical treatment was not attributable to her mental impairment or any other acceptable reason, but rather it was her personal preference for non-Western medicine. See Molina, 674 F.3d at 1114; Chapple v. Berryhill, Case No. 15cv6048 KAW, 2017 WL 3721584, at *12 (N.D. Cal. Aug. 29, 2017) (ALJ did not err in rejecting credibility based on Plaintiff's failure to seek treatment and also on Plaintiff's failure to attend consultative examinations); see e.g., Shackford v. Astrue, No. SACV 09-1398 SS, 2010 WL 3075660, at *5 (C.D. Cal. Aug. 6, 2010) (ALJ may take into account the claimant's failure or refusal to participate in consultative examination or failure to cooperate with the process to deny benefits). Moreover, even if she had a preference for non-Western medicine alternatives, Plaintiff

11

has not provided evidence of such treatment. It was reasonable for the ALJ to base his decision on Plaintiff's failure to follow a course of treatment.[2]

Finally, the ALJ found that there was no record of inpatient hospitalization due to her mental impairments. (AR 25.) In coming to his conclusion, the ALJ wrote, "[s]he has not required inpatient hospitalizations for psychiatric reasons and there is no indication of formal mental health counseling to suggest the claimant had significant cognitive, social, or adaptive issues that would prevent work outside of the residual functional capacity assessed herein for the period at issue." (AR 25.) Contrary to Plaintiff's argument, the ALJ did not simply conclude that she was not disabled because there was no record of inpatient hospitalizations but referenced it for purposes of assessing the degree of her alleged limitations and the RFC. The ALJ's reasoning for rejecting Plaintiff's mental impairment testimony was not in error.

The Court concludes that the ALJ provided specific, clear and convincing reasons discrediting Plaintiff's credibility on the degree of her mental impairments. Thus, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

/ / / /
/ / / /
/ / / /
/ / / /
/ / / /

---

[2] On this issue, Plaintiff argues that the ALJ has a duty to fully and fairly develop the record due to her mental impairments. An ALJ has a heightened duty to develop the record fully when the claimant is mentally ill and unable to protect his or her interests even if represented. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). However, the duty to develop the record is triggered only when there is ambiguous evidence or when the ALJ's finds that the record is inadequate for proper evaluation. Id. Plaintiff does not explain what triggered the ALJ's duty to develop the record. The evidence is not ambiguous and the ALJ did not indicate that the record is inadequate. Therefore, the ALJ did not have a duty to develop the record.

**Conclusion**

Based on the above, the Court ADOPTS the R&R and DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for cross-motion for summary judgment. The Clerk of Court shall close the case.

IT IS SO ORDERED.

Dated: August 27, 2019

Hon. Gonzalo P. Curiel
United States District Judge